2007 WY 100

**BOARD OF PROFESSIONAL RE-SPONSIBILITY, WYOMING STATE BAR, Petitioner,**

v.

**Richard J. MULLIGAN, Attorney No. 5–1731, Respondent.**

**No. D–07–0003.**

Supreme Court of Wyoming.

June 20, 2007.

### ORDER OF PUBLIC CENSURE

**This matter** came before the Court upon a "Report and Recommendation for Public Censure," filed herein May 16, 2007, by the Board of Professional Responsibility for the Wyoming State Bar. The Court, after a care-ful review of the Board of Professional Responsibility's Report and Recommendation, Bar Counsel's "Motion for Public Censure and to File a Report and Recommendation for Discipline," the "Affidavit of Richard J. Mulligan Pursuant to Section 16 of the Disciplinary Code for the Wyoming State Bar," the "Affidavit of Costs and Expenses," and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court; and that Respondent Richard J. Mulligan should be publicly censured in the manner set forth in the Report and Recommendation. It is, therefore,

**ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

**ADJUDGED AND ORDERED** that Richard J. Mulligan shall receive a public censure for his conduct, and he shall be publicly censured in a manner consistent with the recommended censure contained in the Report and Recommendation for Public Censure; and it is further

**ORDERED** that, no later than December 31, 2007, Richard J. Mulligan shall complete fifteen (15) additional hours of Continuing Legal Education (CLE). This CLE requirement is in addition to the mandatory CLE requirements. The topics of this additional CLE must be approved by Bar Counsel no later than September 1, 2007; and it is further

**ORDERED** that Richard J. Mulligan shall draft a billing form for use in matters where he uses an outside contractor. The billing form must specify billing attributable to Mr. Mulligan's own efforts as well as show the amounts passed through directly to an "outside vendor" pursuant to a representation agreement. The billing form must be approved by Bar Counsel; and it is further

**ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Richard J. Mulligan shall reimburse the Wyoming State Bar the amount of $59.97,

representing some of the costs incurred in handling this matter, as well as pay the administrative fee of $500.00. Mr. Mulligan shall pay the total amount of $559.97 to the Clerk of the Board of Professional Responsibility on or before September 1, 2007; and it is further

ORDERED that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

ORDERED that, pursuant to Rule 4(c) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

ORDERED that the Clerk of this Court cause a copy of the Order of Public Censure to be served upon Respondent Richard J. Mulligan; and it is further

ORDERED that the Clerk of this Court transmit a copy of this Order of Public Censure to members of the Board of Professional Responsibility, and the clerks of the appropriate courts of the State of Wyoming.

DATED this 19th day of June, 2007.

/s/ Barton R. Voigt
BARTON R. VOIGT, Chief Justice

## BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY

## WYOMING STATE BAR

## STATE OF WYOMING

*In the matter of RICHARD J. MULLIGAN, WSB Attorney No. 5-1731, Respondent*

*No.2006-54*

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

The Board of Professional Responsibility makes the following report and recommendation for public censure and additional discipline, with its findings of fact, conclusions of law, and recommendation to the Supreme Court of Wyoming:

### FINDINGS OF FACT

1. Richard J. Mulligan ("Mulligan") is currently an active member of the Wyoming State Bar, having been admitted in 1980. He became a member of the New Jersey State Bar in 1968 and practiced in that state until moving to Wyoming. Mr. Mulligan resides in Jackson, Wyoming where he has established his law practice.

2. In April of 2003, Timothy W. Groenstein contacted Mulligan concerning a divorce case which Groenstein had filed against his then wife Yasmine E. Groenstein, in the District Court, Teton, County, Wyoming. At the time Groenstein was represented by another attorney. Mulligan agreed to represent Groenstein in the divorce, and Groenstein's former attorney withdrew.

3. Mulligan and Groenstein entered into a fee agreement dated May 1, 2003, by which Groenstein agreed to pay Mulligan at the hourly rate of Two Hundred Fifty Dollars ($250.00) and advanced a Ten Thousand Dollar ($10,000.00) retainer.

4. The divorce matter was tried before the Honorable Nancy J. Guthrie on September 22, 23, and 24, 2003. In December of 2003, the Judge entered a *Decree of Divorce* granting primary custody of the child to the mother and giving Groenstein a three day a week visitation and an overnight visitation. The District Court further calculated the child support to be paid by Groenstein, but did not take into consideration the dependent payments the child was receiving from the Social Security Administration for the father's disability. Further, the Court calculated Groenstein's income using three components, including a ten percent (10%) statutory rate of interest on Groenstein's investments.

5. Subsequent to the entry of the *Divorce Decree*, Groenstein and Mulligan met on two occasions in December of 2003 to discuss an appeal of the District Court's Order to the Wyoming Supreme Court. At that time, a fee agreement for the appeal was discussed by the parties.

6. The parties disagree as to the nature of the discussion concerning the fee. Mulligan claims that he told Groenstein that he would continue to charge the same hourly rate, Two Hundred Fifty Dollars ($250.00), and estimated the cost of appeal would be approximately Fifteen Thousand Dollars ($15,000.00) including costs of transcript and set a fee cap of Fifteen Thousand Dollars ($15,000.00). Groenstein alleges that he was told the appeal would cost no more than Ten Thousand Dollars ($10,000.00).

7. Because of the time constraints, the *Notice of Appeal* was filed by Mulligan on January 7, 2004. On January 11, 2004, Mulligan prepared a written fee agreement which was emailed and then mailed to Groenstein. The fee agreement provided, among other things, for an hourly rate for Mulligan of Two Hundred Fifty Dollars ($250.00), a cap on attorneys' fees of Fifteen Thousand Dollars ($15,000.00), a retainer of Five Thousand Dollars ($5,000.00) and gave Mulligan the right to employ associate counsel "... to assist or principally prepare and conduct the appeal of this matter."

8. Groenstein claims that shortly after receiving the fee agreement by email and mail, he complained to Mulligan that the fee cap was to be Ten Thousand Dollars ($10,000.00) and outside attorneys were not to be used. Mulligan claims that Groenstein did not respond to the proposed fee agreement until May of 2004, after the appellate brief had been prepared and filed.

9. The appeal brief was prepared and filed with the Supreme Court by letter dated May 7, 2004.

10. By letter dated May 28, 2004, Groenstein paid Mulligan the Five Thousand Dollar ($5,000.00) retainer in accordance with the fee agreement, but complained that he had never received a "corrected copy" of the fee agreement.

11. In early June of 2004, Mulligan sent another fee agreement to Groenstein which provided, among other things, "... the client agrees to pay a fee in the amount of $250.00 per hour for handling of the appeal," that the time for Mulligan would be charged at Two Hundred Fifty Dollars ($250.00) per hour,

and further that associate counsel could be employed "with the approval of the client to assist in the appeal of this matter." There was no cap on fees in this fee agreement.

12. Groenstein refused to sign the new fee agreement and the parties could not agree upon a compromise agreement.

13. On July 30, 2004 Groenstein terminated Mr. Mulligan as his counsel and employed other counsel who argued the matter before the Wyoming Supreme Court. The Supreme Court issued its decision on January 19, 2005, affirming the District Court's judgment with regard to child custody and reversing the District Court's decision concerning the amount of child support and remanded for proper calculation.

14. During the time period from January of 2004 through May 7, 2004, Mulligan was working on the appeal brief and communicating with Groenstein discussing the contents and scope of the brief.

15. To assist in the preparation and filing of the brief, Mulligan hired an independent associate counsel, a Wyoming attorney who had been admitted to practice for over ten (10) years and who had contracted with Mulligan before on other cases for other clients and was experienced in preparing appeal briefs. The attorney reviewed the files and transcript of the trial and prepared the brief for Mulligan's signature.

16. In doing the legal research, reviewing the files and generally preparing the brief for filing, the associate counsel charged Mulligan at the rate of Eighty Five Dollars ($85.00) per hour. The counsel submitted monthly statements to Mulligan, which included a declaration of the time, in hours and tenths of hours, spent in preparing the brief, a general description of the services performed and the total dollar amount due and owing based upon the time expended times Eighty Five Dollars ($85.00) per hour. Mulligan paid these invoices as received.

17. Mulligan submitted monthly, itemized statements to Groenstein which indicated the date the service was performed, the general nature of the services, and the time expended in performing those services, multiplied by

the hourly rate of Two Hundred Fifty Dollars ($250.00) per hour.

18. In billing for the associate counsel's services, Mulligan would incorporate the attorney's statement to him in his monthly invoices to Groenstein, giving no indication that associate counsel had actually done the work. Mulligan then billed Groenstein for the work done by the attorney at Mulligan's hourly rate of Two Hundred Fifty Dollars ($250.00) per hour.

19. This was the billing practice that Mulligan had followed in the past with other clients when he utilized the associate counsel's services, paying the attorney at the hourly rate of Eighty Five Dollars ($85.00) per hour and billing at his rate of Two Hundred Fifty Dollars ($250.00) plus/minus per hour. In following this practice, Mulligan states that he did not believe he was violating any professional code or rule and was billing Groenstein for services rendered by the Mulligan Law Office.

20. Subsequent to his termination, Mulligan continued to bill Groenstein for legal services and costs incurred in perfecting the appeal. When Groenstein refused to pay the outstanding invoices, Mulligan filed a complaint against Groenstein seeking payment of the remaining amount of attorney's fees and costs incurred in the appeal. Groenstein counterclaimed against Mulligan, alleging, among other things, that Mulligan committed legal malpractice in his representation of Groenstein and that Groenstein was damaged as a result. Groenstein's malpractice claims were dismissed pursuant to Mulligan's Motion for Judgment on the Pleadings and the claims for attorneys' fees were resolved through settlement.

21. After the settlement of the litigation between Mulligan and Groenstein, Groenstein filed a Complaint before the Board of Professional Responsibility alleging "Billing Fraud" by Mulligan in billing Groenstein at Mulligan's hourly rate Two Hundred Fifty Dollars ($250.00) for work done by the associate attorney at a lesser rate Eighty Five Dollars ($85.00).

■ 22. Mulligan has violated Rule 8.4(c) of the Wyoming Rules of Professional Con-

duct. The stipulated violation is based upon Mulligan's misrepresentation to Groenstein that Mulligan had actually performed all of the legal services in perfecting the appeal of Judge Guthrie's decision, including research and preparation of the brief and upon Mulligan's charging his hourly rate of Two Hundred Fifty Dollars ($250.00) per hour for work done by the associate counsel at Eighty Five Dollars ($85.00) per hour.

## CONCLUSIONS OF LAW

23. Standard 4.63 of the ABA Standards for Imposing Lawyer Sanctions discusses the acts which result in a public censure for violations of Rule 8.4(c): "Reprimand [public censure] is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client."

24. ABA Standards for Imposing Lawyer Sanctions 9.1 provides for consideration of aggravating and mitigating circumstances in deciding on an appropriate sanction. Section 9.21 defines aggravating circumstances as "any consideration, or factors that may justify an increase in the degree of discipline to be imposed." Section 9.31 defines mitigating circumstances as "any considerations, or factors that may justify a reduction in the degree of discipline to be imposed.":

a. Applicable aggravating factors in this case are:

i. Section 9.22(i)—substantial experience in the practice of law.

b. Applicable mitigating factors are:

i. Section 9.32(a)—absence of a prior disciplinary record,

ii. Section 9.32(e)—full and free disclosure to disciplinary board and cooperative attitude toward proceedings, and

iii. Section 9.32(k)—imposition of other penalties or sanctions.

## RECOMMENDATION TO THE SUPREME COURT OF WYOMING

■ 25. As an appropriate sanction for his violations of Wyoming Rules of Professional Conduct, it is recommended that:

a. Respondent receive a public censure which states as follows: "Jackson attorney Richard Mulligan received a formal public censure by order of the Wyoming Supreme Court on _____. Mr. Mulligan violated Rule 8.4(c) of the Wyoming Rules of Professional Conduct by misrepresentation to his client that Mulligan had actually performed all of the legal services in perfecting an appeal to the Wyoming Supreme Court and billing at his hourly rate for work done by an independent contract counsel. In mitigation, Mr. Mulligan fully cooperated with the Bar's investigation and has never had any other complaints to the Bar by either clients or other persons against him. Mr. Mulligan stipulated to these facts and consented to this discipline. The Board of Professional Responsibility approved the stipulation, recommending that the Wyoming Supreme Court publicly censure Mr. Mulligan and require that he attend additional continuing legal education. After reviewing the record and recommendation, the Wyoming Supreme Court entered its order publicly censuring Mr. Mulligan, requiring him to attend additional continuing legal education, and requiring him to pay some of the costs of the Wyoming State Bar for prosecuting this matter."

b. Respondent will pay the administration fee of Five Hundred Dollars ($500.00) and costs capped at Two Hundred Dollars ($200.00) no later than September 1, 2007.

c. Respondent will complete fifteen (15) additional CLE hours (above the mandatory annual requirement) no later that December 31, 2007. The topics of the additional CLE must be approved by Bar Counsel no later than September 1, 2007, Mulligan shall draft a form for billing when using an outside contractor—either under his own billing or showing the amounts passed through directly as an "outside vendor" pursuant to his representation agreement. The draft billing must be approved by Bar Counsel.

This decision is unanimously made by a quorum of the Board of Professional Responsibility. It is therefore so recommended May 15, 2007.

/s/ Joe M. Teig
Chair, Board of Professional Responsibility